UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THE GENERAL HOSPITAL CORPORATION, <br><br> Plaintiff, <br><br> v. <br><br> DIANA GAETA a/k/a DIANA MAE GAETA, <br><br> Defendant/Third-Party Plaintiff, <br><br> v. <br><br> AETNA HEALTH, INC. f/k/a AETNA U.S. HEALTHCARE, INC. f/k/a U.S. HEALTHCARE, INC., <br><br> Third-Party Defendant. | Civil Action No. 04-12331-RWZ |

**ANSWER OF THIRD-PARTY DEFENDANT AETNA HEALTH, INC.
TO THIRD-PARTY COMPLAINT OF DIANA GAETA**

Pursuant to Rules 8, 12, and 15 of the Federal Rules of Civil Procedure, third-party

defendant Aetna Health, Inc. f/k/a Aetna U.S. Healthcare, Inc. f/k/a U.S. Healthcare, Inc.

(hereinafter "Aetna"), submits the following as its Answer to the to the Third-Party Complaint of

defendant and third-party plaintiff Diana Gaeta a/k/a Diana Mae Gaeta ("Diana").

**FIRST DEFENSE**

With respect to the specific allegations of the Third-Party Complaint, Aetna hereby

answers as follows:

1.     Aetna is without knowledge or information sufficient to form a belief as to the

truth of the allegations set forth in paragraph 1.

- 2 -

2.    Aetna is without knowledge or information sufficient to form a belief as to the truth of the allegation that Diana has denied any liability to plaintiff General Hospital Corporation.  Aetna denies that it is contractually obligated to pay any indebtedness of Diana to the plaintiff.  Aetna denies that it acted as an underwriter with respect to the health insurance benefits available to Diana under the employee welfare benefit plan established and maintained by Trans World Airlines, Inc. ("TWA").  In further answering, Aetna states that it acted solely as a third-party claim administrator with regard to TWA's self-funded health insurance plan ("Plan").  A true and accurate copy of Administrative Service Contract Number ASC-652100 ("ASO"), entered into between Trans World Airlines, Inc. and Aetna Life Insurance Company relating to the Plan is attached hereto as Exhibit "1."

3.    Aetna is without knowledge or information sufficient to form a belief as to the truth of the allegation that Diana was the spouse of Robert Gaeta ("Robert") at all time material to this action.  Aetna admits that Robert and Diana were at one time covered persons under the Plan.  Aetna denies that Robert and Diana were ever insured by Aetna under the Plan for medical treatment.  In further answering, Aetna states that true and accurate copies of the Summary of Coverage, Table of Contents, and Amendment to Plan of Benefits relating to the Plan are attached hereto as Exhibits "2," "3," and "4."  The terms and conditions of Diana's coverage are set forth in those plan documents, as well as in the ASO attached as Exhibit "1", and Aetna denies that it insured the Plan health insurance benefits, and that Diana's treatment should have been covered by Aetna.

4.    The allegations set forth in this paragraph state a legal conclusion to which no response is required.  To the extent that the allegations of this paragraph do require a response, they are denied.

5.      Aetna admits that it is duly authorized to transact business in the Commonwealth of Massachusetts.  The remaining allegations set forth in this paragraph state legal conclusions to which no response is required.  To the extent that the remaining allegations of this paragraph do require a response, Aetna denies them.

## Request for Relief

This paragraph sets forth a request for relief to which no response is required.  To the extent a response is required, Aetna denies that the defendant and third-party plaintiff is entitled to the relief she requests.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

The third-party plaintiff has failed to state a claim against Aetna upon which relief can be granted.

### Second Affirmative Defense

Aetna has fully performed whatever contractual duties it may have owed to the third-party plaintiff and therefore she is estopped from asserting a claim against Aetna.

### Third Affirmative Defense

Aetna's handling of the third-party plaintiff's claim complied fully with the terms of the Administrative Services Agreement.

### Fourth Affirmative Defense

The third-party plaintiff has failed to satisfy all conditions precedent for the payment of benefits under the Plan in that, among other things, she failed to provide Aetna with proper proof of claim.

- 4 -

### Fifth Affirmative Defense

Aetna has complied with and performed all of its promises, obligations and duties under the Plan and its handling of the third-party plaintiff's claim complied fully with the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq*.

### Sixth Affirmative Defense

The third-party plaintiff is not entitled to the health insurance benefits she seeks because the medical treatment provided to her by the plaintiff is not covered by the Plan.

### Seventh Affirmative Defense

The third-party plaintiff's State law breach of contract claim against Aetna is preempted by ERISA and must be dismissed.

### Eighth Affirmative Defense

The third-party plaintiff's demand for attorney's fees should not be granted, because under ERISA, 29 U.S.C. §1132(g), the defenses asserted by Aetna are reasonable and made in good faith.

### Ninth Affirmative Defense

Each and every act done or statement made by Aetna and its officers, employees and agents with reference to the third-party plaintiff was a good faith assertion of Aetna's rights and therefore was privileged and/or justified.

### Tenth Affirmative Defense

Pursuant to 29 U.S.C. §1132(g), Aetna is entitled to an award of its reasonable attorney's fees incurred in defense of this action.

- 5 -

### Eleventh Affirmative Defense

Aetna did not act as a fiduciary with regard to the Plan, therefore Aetna is not liable to the third-party plaintiff.

### Twelfth Affirmative Defense

The third-party plaintiff's claim against Aetna is barred by the applicable statute of limitations.

### Thirteenth Affirmative Defense

The third-party plaintiff's claim is barred by the three-year contractual limitations period set forth in the Plan.

### Fourteenth Affirmative Defense

Inasmuch as her claim against Aetna is governed by ERISA, the third-party plaintiff is not entitled to a jury trial.

WHEREFORE; third-party defendant Aetna Health, Inc. prays that the Court:

I.     Enter judgment in Aetna's favor on the Third-Party Complaint;

II.    Award Aetna its reasonable costs of suit and attorneys' fees; and

III.   Grant such other and further relief as the Court deems just and proper.

                              AETNA HEALTH, INC. f/k/a
                              AETNA U.S. HEALTH CARE,
                              INC. f/k/a U.S. HEALTHCARE INC.
                              By its attorneys,


                              Edward P. O'Leary, BBO #551932
                              Fitzhugh, Parker & Alvaro LLP
                              155 Federal Street, Suite 1700
                              Boston, MA 02110
                              (617) 695-2330

Dated: November 11, 2004

- 6 -

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 11th day of November served a copy of the above document on counsel of record, as set forth below, by first-class mail, postage prepaid.

Wayne A. Perkins, Esquire
403 Highland Avenue
Somerville, MA 02144

Erika Soong, Esq.
Daniels Law Offices, P.C.
One Center Plaza
Boston, MA 02108

Edward P. O'Leary

EXHIBIT 1



# Aetna
## LIFE & CASUALTY



## ADMINISTRATIVE SERVICES CONTRACT NUMBER ASC-652100

Agreement entered into between

### TRANS WORLD AIRLINES, INC.

(hereinafter referred to as the "Contractholder")

and

### AETNA LIFE INSURANCE COMPANY
Hartford, Connecticut
(hereinafter referred to as "Aetna")

WHEREAS, the Contractholder has adopted employee benefit plans, hereinafter designated as the "Plan", which are set forth in the Appendices to this Contract, for certain of its employees and their dependents, under which Plan the Contractholder retains all liabilities for benefits for eligible employees and their dependents; and

WHEREAS, the Contractholder has requested Aetna to provide certain administrative services to the Plan, and Aetna has agreed to provide such services in accordance with the terms of this Contract without assuming any liability of the Contractholder under the Plan;

NOW, THEREFORE, in consideration of the mutual promises and covenants contained in this Contract, it is hereby agreed as follows:

GAETA002



AETNA-000001

"Trademark of Aetna Life Insurance Company and its associated companies

## Section 1. Administrative Services

Aetna will provide the Contractholder with services for the administration and operation of the Plan.

The services provided by Aetna will be coordinated by a field group representative who will act as account executive to assure effective and efficient operation of the Plan. In addition to coordinating all of the services of Aetna, the field group representative will assist in identifying and resolving administrative, benefit payment, and communication problems and the field group representative will provide guidance and advice to the Contractholder on the operation of the Plan.

Services provided by Aetna include, but are not restricted to:

(1) Development and design of the Plan, both initially and in connection with benefit revisions, additions, and extensions, including

    (a) general underwriting assistance and actuarial advice,

    (b) cost estimates of the type and variety which would be applicable if the Plan were insured,

    (c) preparation of Plan descriptions as an appendix to this Contract for each of the benefit programs under the Plan, both initially and in connection with benefit revisions, additions and extensions, including the review of Summary Plan Descriptions (SPDs) prepared by the Contractholder;

(2) Assistance with the enrollment of employees;

(3) Development, design, and installation of administrative and recordkeeping systems;

(4) Development, design, and installation of the benefit-account structure for the Plan which may be structured separately by class of employee and by division, or subsidiary, or associated company of the Contractholder;

(5) Development, design, and installation of systems and forms for processing requests for benefit payments and the payment of Plan benefits in accordance with Aetna's benefit cost control standards, audit procedures, and payment practices;

(6) Preparation of accounting reports for use by the Contractholder in the financial management and administrative control of the Plan. These reports will be furnished in accordance with the benefit-account structure installed for the Plan and will include:

GAETA003     AETNA-000002

(a)  initial and renewal expected unit cost, calculated as if
     benefits were insured, and corresponding total expected cost
     estimates separately for each major benefit line in the Plan
     and combined,

(b)  annual accounting reports, separately by major benefit line
     and combined, which show

         (i)    expected costs, calculated as if the benefits were
                insured,
         (ii)   paid benefits,
         (iii)  incurred but unpaid benefit liabilities,
         (iv)   service charge, and
         (v)    variation from expected.

(c)  monthly, quarterly, or combined contract year listings of paid
     benefits,

(d)  monthly or quarterly accumulated contract year expected
     cost/paid benefit reports,

(e)  annual benefit payment statistics of plan trends and
     effectiveness.

(7)  Processing and payment of claims submitted under the Plan
     (including the application of rates and charges negotiated by the
     Contractholder with hospitals and physicians for claims submitted
     through 1st Choice);

(8)  Administration of claims for services of Partners PPO for TVA
     covered persons in locations mutually agreed to by Contractholder
     and Aetna;

(9)  Assistance with the provision of continuation coverage as required
     by sections 4980B of the Internal Revenue Codes and 601 et. seq. of
     ERISA and related regulations (COBRA coverage).

## Section 2. Banking Arrangement

Payment by Aetna of any amount payable under the Plan shall be made by draft
payable through Connecticut National Bank or a bank selected by Aetna
(referred to in this Contract as the Bank). Such drafts after presentment by
the Bank will be processed and, if in order, accepted on behalf of
Contractholder by Aetna. The Contractholder, by execution of this Contract,
expressly authorizes Aetna to issue and accept such drafts on behalf of the
Contractholder for the purpose of payment of benefits under the Plan. The
Bank, upon acceptance of drafts by Aetna, will advise the Contractholder's

GAETA004          AETNA-000003

bank of the amount of the drafts accepted by Aetna for payment, and the
Contractholder agrees that its bank shall, on the date of such notice,
forward to the Bank an amount in Federal funds equal to the total of such
drafts.

## Section 3. Contractholder Reports

It is mutually understood that the effective performance by Aetna of the
administrative services under this Contract will require that the
Contractholder furnish to Aetna timely reports and information in a form and
manner specified by Aetna and agreed to by the Contractholder, such reports
and information to include:

    (a) Identification or certification of individuals eligible for
       benefits, kinds of benefits to which such individuals are entitled,
       date of eligibility, and such other information as may be necessary
       for processing of benefit payments;

    (b) Number of employees and dependents covered under the Plan,
       separately by various kinds of benefits; and

    (c) Distribution of employees covered under the Plan, by geographic
       area, age, sex, and earnings level and by distribution of covered
       dependents.

It is mutually agreed that Aetna shall not be responsible for delay in the
performance of this Contract or for non-performance of this Contract, which
is caused by the failure of the Contractholder to furnish any required
information promptly.

## Section 4. Administration Charge

For January 1, 1988 through December 31, 1990, the actual administration
charge shall be as described in separate letters issued by Aetna dated July
13, 1990 and attached hereto as Exhibits A-1 and A-2, for application during
the various periods comprising the Contract term. During these periods the
amount payable by the Contractholder in accordance with the following
paragraph shall be the amount described in the applicable letter.

Following each month that this Contract is in effect, Aetna shall submit to
the Contractholder a statement showing the actual administration charge to be
billed for that month. Within 20 days after the date shown on such statement
the Contractholder shall pay to Aetna the amount of such actual
administration charge.

GAETA005        AETNA-000004

The charges for administering the Plan will be determined by Aetna as a function of the number of employees covered under the Plan and number of processed claim transactions. For the purpose of determining such charges, a processed claim transaction is defined as follows:

For Medical or Dental benefits, a processed claim transaction is the submission of bill(s) (and/or other information for one claimant received by Aetna in order to further evaluate payment of the claim) which results in any combination of benefit payments, benefit denials, or pended benefit requests. A benefit request may be pended because of missing information from employees or providers, additional information needed from providers, review by a medical/dental consultant or other Aetna professionals, other coverage or Medicare information needed, or security review. Each dental pre-determination is handled as a separate transaction. If a submission includes expenses which are incurred in two or more calendar years, the expenses are handled as two or more separate claim transactions.

A single claim submission would also create separate processed claim transactions for each employee benefit "coverage" under which expenses were incurred. Comprehensive Medical, Basic Medical Only, Major Medical Only, Basic Medical plus Major Medical, Comprehensive Dental, and Basic Dental are considered to be separate "coverages".

Within 120 days following the close of a contract period, Aetna will prepare and submit to the Contractholder a financial accounting of the transactions during the contract period.

Aetna shall provide 60 days advance written notice of the administration charges for contract periods beginning January 1, 1991 and for subsequent contract periods. Administration charges agreed to by Aetna and the Contractholder shall be described in separate official letters to be attached hereto, and made a part of, this Contract.

If Aetna and the Contractholder do not agree on administration charges to be payable for a contract period beginning on January 1, 1991, or subsequent contract periods, the provisions of paragraph 12(c) below shall apply.

Section 5. Other Provisions

(a) Aetna in performing its obligations under this Contract is acting only as agent of the Contractholder and the rights and responsibilities of the parties shall be determined in accordance with the law of agency, except as otherwise herein provided. The Contractholder hereby delegates to Aetna authority to make determinations on behalf of the Contractholder with respect to benefit payments under the Plan and to

GAETA006        AETNA-000005

pay such benefits, subject, however, to a right of the Contractholder to review and modify any such determination. For the purposes of the Federal "Employee Retirement Income Security Act of 1974 (ERISA)" and any applicable state legislation of similar nature, the Contractholder shall, however, be deemed the administrator of the Plan.

(b)   Aetna shall not be liable to use its funds for the payment of benefits under the Plan of the Contractholder and if, in the normal course of business under this Contract, Aetna, or the Bank with which Aetna has a working arrangement, chooses to advance any funds, the Contractholder shall reimburse Aetna or the Bank for such payment. In no event shall such advances by Aetna or the Bank be construed as obligating Aetna or the Bank to make further advances, or to assume liability of the Contractholder for the payment of benefits under the Plan.

(c)   Aetna shall use that degree of care and diligence in the exercise of its powers and the performance of its duties and services hereunder that a prudent administrator of claims or provider of similar services and experienced in such matters would use acting in like circumstances under a similar insured or uninsured employee benefit plan.

(d)   Aetna agrees to indemnify the Contractholder and hold the Contractholder harmless from and against any and all loss, damage, and expense, including court costs and attorneys' fees with respect to this Contract resulting from or arising out of the dishonest, fraudulent, or criminal acts or omissions of Aetna's employees, acting alone or in collusion with others, or resulting from acts or omissions attributable to Aetna's employees not in compliance with (c) above.

(e)   Except as provided in (c) and (d) above, the Contractholder agrees to save Aetna harmless by indemnifying Aetna for any and all loss, liability, damage, expense, or other cost or obligation:

     (i)   resulting from and arising out of claims, demands or lawsuits brought against Aetna in administering the Plan, or to obtain benefits under the Plan, or

    (ii)   in connection with the release and transfer of benefit payment information to the Contractholder or any other person or organization to whom such information is released at the request of the Contractholder.

(f)   If any payment is made hereunder to an ineligible employee, dependent or retiree, or if it is determined that more or less than the correct amount has been paid by Aetna, Aetna will:

GAETA007      **AETNA-000006**

   (i)   Adjust any underpayments promptly;

   (ii)  Attempt to recover overpayments;

   (iii)  If within six (6) months of its discovery, Aetna is not successful in fully recovering an overpayment, and if the overpayment is due solely to Aetna error, Aetna agrees to furnish funds, or to permit Contractholder to deduct as a credit against administrative charges payable to Aetna by the Contractholder, in an amount sufficient to cover such erroneous overpayment.  Aetna shall be subrogated to any right of the Contractholder for recovery of any amount for which Aetna has furnished funds or has permitted the Contractholder to deduct as a credit against administrative charges payable to Aetna by the Contractholder.

(g)  The work to be performed by Aetna under the Contract may, at its discretion, be performed directly by it or wholly or in part through a subsidiary or affiliate of Aetna, but Aetna shall remain liable for services under this Contract.  Performance of work under this Contract may be assigned in whole or in part by Aetna to other than a subsidiary or affiliate only with the prior written consent of the Contractholder and subject to Aetna remaining liable as assignor.

(h)  Aetna may seek the services of experts in performing its duties under this Contract. Aetna shall promptly notify the Contractholder or legal counsel designated by the Contractholder in writing in connection with litigation or extraordinary benefit matters under the Plan or this Contract.  The Contractholder hereby agrees to join the defense of any legal action against Aetna involving a claim for Plan benefits, and that the defense of such claims and all damages and expenses with respect to such defense shall not be the obligation of Aetna subject to the applicability of 5(d); provided that at the sole discretion of the Contractholder, the Contractholder shall have the control of any defense or settlement of such claim; and provided further that in any event, Aetna agrees to provide all reasonable cooperation to the Contractholder in connection with any defense or settlement of such claims. The Contractholder also hereby agrees to join the defense of any legal action against Aetna involving actions of Aetna taken at the express written request or demand of the Contractholder and that defense of such claims and all damages and expenses with respect to such defense shall not be the obligation of Aetna subject to the applicability of 5(d).

(i)  Aetna shall be entitled to rely upon any communication reasonably believed by Aetna to be genuine and to have been signed or presented by the proper party or parties.

GAETA008

AETNA-000007

The parties shall not be bound by any notice, direction, requisition, or request unless and until it shall have been received in writing, in the case of Aetna Life Insurance Company at 151 Farmington Avenue, Hartford, Connecticut 06156 or at such other address as Aetna specifies for the purposes of this Contract by notice in writing addressed to the Contractholder, and in the case of the Contractholder at:

> Address: Trans World Airlines, Inc.
>          11500 Ambassador Drive
>          Kansas City, Missouri  64153
>
>          Attn:  William Hart
>                 Manager Employee Benefits

with a copy to:

> Corporate Secretary
> Trans World Airlines, Inc.
> 100 S. Bedford Road
> Mt. Kisco, New York  10549

(j)  In addition to the procedures applicable under any other provision of this Contract in the event of termination or withdrawal in whole or in part of Aetna's services, Aetna agrees that it will cooperate in good faith with the Contractholder or its designee as necessary to assure a smooth transition and an orderly transfer of functions and information.

(k)  Services not provided for in this Contract may be provided by separate agreement or amendment entered into by Aetna and the Contractholder in writing executed by their respective officers duly authorized to do so.

## Section 6.  Period of Contract

This Contract shall take effect as of January 1, 1988 and end on December 31, 1988 (this period being the first contract period).  It shall be renewed for successive periods of twelve months each (subsequent contract periods) unless terminated in accordance with the terms of Section 12.

## Section 7.  Laws Governing Contract

This Contract shall be construed and enforced according to the laws of the State of Connecticut.

## Section 8.  Contract Counterparts

This Contract may be executed in any number of counterparts, each of which shall be deemed an original, and said counterparts shall constitute but one and the same instrument.

AETNA-000008
GAETA009

## Section 9.  List of Employers Included

The List of Employers included under the Contract shall be maintained by Aetna and shall, as of any given time, consist of the Contractholder and the other employers which have been included in the List by written mutual agreement between Aetna and the Contractholder, and which have not been eliminated from the List by written notice from the Contractholder. The Contractholder may act for and on behalf of any and all of the employers included in this List in all matters pertaining to this Contract, and every act done by the Contractholder, agreement made between Aetna and the Contractholder, or notice given by Aetna to the Contractholder or by the Contractholder to Aetna, shall be binding on all such employers. Aetna, however, shall be required to perform services under this Contract with respect to any employer (other than the Contractholder) or class(es) of employees (other than employees of the Contractholder) included under the Contract only if (i) Aetna so agrees in writing or (ii) Aetna does not, within 31 days after being notified that such employer or class(es) of employees has been included (or is to be included) under the Contract, give written notice to the Contractholder that Aetna chooses not to perform services under this Contract with respect to such employer or class(es) of employees.

## Section 10. Modification of Contract

This Contract, and appendices hereto, constitute the entire contract between the parties hereto. Changes in this Contract, or in any appendix hereto, may be made by mutual agreement in writing between Aetna and the Contractholder by their authorized representatives. Aetna, however, shall have the right within thirty-one (31) days of receiving notice of a material change in Plan benefits or a material change in the claim payment requirements under the Plan to reject revising the Contract, or any appendix hereto, or any of its systems or operations to add or change benefits or claim payment requirements under the Plan. In the event of any such rejection by Aetna, the Contractholder shall have the right to terminate this Contract forthwith upon giving of written notice.

## Section 11. Record Ownership and Review; Confidentiality

All documents, records, reports and data, including data recorded in Aetna's data processing systems, ("Documentation") related to the receipt, processing, and payment of claims including all claim histories shall at all times be the property of the Contractholder, subject to Aetna's right to possession and use during the continuance of the Contract and Aetna's right to maintain such documentation in such form as Aetna deems appropriate and in accordance with standard practices.

During the term of this agreement and for one (1) year following its termination, upon reasonable prior request, and unless prohibited by law or regulation, the benefit payment information contained in such Documentation shall be made available to the Contractholder for its audit or inspection

GAETA010    AETNA-000009

during regular business hours at the place or places of business where it is maintained by Aetna, subject to the satisfactory completion of an appropriate Aetna Claim File Audit Request Form (a copy of which is attached as Exhibit B).

Upon termination of the Contract, benefit payment information (and any other information requested by the Contractholder that would be needed or helpful in effecting a transfer) contained in such Documentation shall be delivered or otherwise made available to the Contractholder, or a successor administrator authorized by the Contractholder, in such reasonable and mutually agreeable manner, time and place specified by Contractholder subject to a reasonable administration charge as determined by Aetna based on the extent of TVA's requests. Aetna shall also remain available for consultation on an as needed basis for a reasonable period of time not to exceed twelve (12) months duration.

Aetna shall maintain the confidentiality of all medical, personal and financial information pertaining to each employee and employee dependent and shall not disclose such information to anyone (other than the Contractholder or its designee) without the Contractholder's prior written consent, which shall not be unreasonably withheld and provided, further, that Contractholder's consent shall not be required if Aetna's disclosure is required by judicial process so long as Contractholder is given advance written notice of Aetna's intent to make such disclosure and is afforded the opportunity to contest (or take necessary steps to stay) such judicial process in its own name and/or Aetna's name, as may be appropriate. All information provided to Aetna by the Contractholder shall also be maintained as confidential and not disclosed to anyone without the Contractholder's written consent, not to be unreasonably withheld. The foregoing confidentiality and non-disclosure obligations shall survive termination of this Contract.

## Section 12. Termination of Contract

(a) If any state or other jurisdiction enacts a law which prohibits the continuance of this Contract, or the existing law is interpreted to so prohibit the continuance of this Contract, the Contract shall terminate automatically as to such time or jurisdiction on the effective date of such law or interpretation.

(b) The Contractholder may terminate this Contract at any time with respect to all employees (including their dependents) of itself and any one or more of the Employers included under this Contract by giving Aetna at least thirty-one (31) days written notice stating when, after the date of such notice, such discontinuance shall become effective.

GAETA011          AETNA-000010

(c) Except as provided in (d) and (e) below, Aetna reserves the right to terminate this Contract by giving to the Contractholder at least one hundred twenty (120) days written notice stating when, after the date of such notice, such termination shall become effective. If Aetna and the Contractholder fail to agree on an administration charge for any contract period beginning on and after January 1, 1991, and, as a result, Aetna gives notice of termination in accordance with this provision, Aetna agrees the administration charge for a contract period following a contract period for which charges were agreed upon will be the charge in effect for the prior contract period guaranteed in accordance with Exhibit A or subsequent official letters executed by duly authorized officers of each party and attached hereto adjusted by the change in the service component of the Consumer Price Index for the prior twelve (12) month period preceding the end of the contract period for which charges were last agreed upon.

(d) If the Contractholder fails after timely notice to provide funds to the Bank for the daily payment of the drafts accepted by Aetna, Aetna shall have the right to cease disbursement of benefit payments until the requested funds have been provided. In the event of default, Aetna shall contact the Contractholder by telephone, or by personal contact by the field representative, in an effort to resolve the default. Aetna shall provide written notice of default, and if the Contractholder fails to provide such funds within five (5) banking days of such written notice, Aetna may terminate the Contract immediately upon notice to the Contractholder by telegram, teletype or other means of communication.

(e) Aetna may terminate the Contract for failure to pay the administration charge within the period specified in Section 4 immediately on notice to the Contractholder by telegram, teletype or other means of communication if the Contractholder fails to pay such charge within five (5) banking days of written notice of default by Aetna.

(f) The Contractholder shall have the right to terminate this Contract as provided in Section 10.

(g) In the event of termination of this Contract, Aetna shall complete the processing of all requests for benefit payments under the Plan which are received by it prior to termination of this Contract, but it shall have no obligation: (i) to complete the processing of any such requests if the Contractholder has failed, within five (5) days after receipt of written notice of payment or administration charge default, to provide funds for the payment of drafts accepted by it or the administration charge; (ii) to process requests for benefit payments presented to it after termination of this Contract, unless requested to do so by the Contractholder; or (iii) to issue drafts after the termination date for requests for benefit payments. The Contractholder will be liable for all drafts properly issued by Aetna in accordance herewith during the continuance of, and within a reasonable time following termination of, the Contract. All drafts issued by Aetna, which are outstanding upon termination of the Contract, or issued thereafter in accordance with the immediately preceding sentence, will continue to be the responsibility and liability of the Contractholder.

GAETA012

AETNA-000011

An Administration Charge will be made to take into account the processing of claims (including, if applicable, issuance of drafts by Aetna) which have been received and are outstanding upon termination of the contract. The charge basis shall be the per processed claim transaction monthly charge guaranteed in accordance with the applicable Exhibit A (or subsequent official letter executed by duly authorized officers of each party and attached hereto) in effect for the last month the Contract is in effect. In addition, the parties will agree on a methodology for determination of a one-time charge associated with the termination. If Aetna and the Contractholder fail to agree on such methodology within the applicable notice period in 12(b) or (c) above or within the 31 day period described in Section 10, Aetna shall have no obligation to complete the processing of requests for benefit payments received by it prior to the termination date until such agreement is reached.

IN WITNESS WHEREOF, the parties hereto have caused this Contract to be executed by their respective officers duly authorized to do so, to take effect as of January 1, 1988.

Dated At: _October 22, 1990_

TRANS WORLD AIRLINES, INC.

By: _____      _____

    _Vice President - Health and Market Development_      Witness
         (Official Title)

Dated At: Hartford, Connecticut - October 8, 1990

AETNA LIFE INSURANCE COMPANY

By: _Lewis R. Mervine_

    Legal Director
    (Official Title)

    _Nancy J. Charles_
       Registrar

agree\p6

GAETA013

AETNA-000012

EXHIBIT 2

# Summary of Coverage

**Employer**: Trans World Airlines, Inc.

**ASC**: 652100

**SOC**: 30A

**Issue Date**: June 1, 1995

**Effective Date**: November 1, 1994

The benefits shown in this Summary of Coverage are available for you and your eligible dependents.

## Eligibility

**Employees**

You are in an Eligible Class if you are a regular active

Management employee (as determined by your Employer); or
Dispatcher; or
Non-Management employee; or

of an Employer participating in this Plan, and you are located in either the St. Louis or Kansas City First Choice area, for COBRA Continuation for medical only or for medical continuation due to furlough, and you are not participating in a Health Maintenance Organization (HMO).

Your Eligibility Date, if you are then in an Eligible Class, is the Effective Date of this Plan. Otherwise, it is the date you commence active work for your Employer or, if later, the date you enter an Eligible Class.

GAETA017



**Dependents**

You may cover your:

- wife or husband; and
- unmarried children at least 14 days but under 21 years of age.

You may also cover a child under 14 days of age if charges are incurred during that time for:

- treatment of the child's disease, injury, congenital abnormality, or hereditary complication; or
- care beyond normal nursery care due to the child's premature birth. This means the child weighed less than 5 1/2 pounds at birth.

Any other unmarried child under age 23 who goes to school on a regular basis and depends solely on you for support will be covered as a dependent.

Your children include:

- Your biological children.
- Your legally adopted children (includes any child you are in the process of adopting).
- Any other child you support who lives with you in a parent-child relationship.*

\* Any grandchild living with you in a parent-child relationship must be legally adopted to be considered a covered dependent.

No person may be covered both as an employee and dependent and no person may be covered as a dependent of more than one employee.

# Enrollment Procedure

You will get a form to fill out. Sign and return it to your Employer.

# Effective Date of Coverage

**Employees**

Your coverage will take effect on your Eligibility Date. If you happen to be both disabled and away from work on the date your coverage would take effect, the coverage will not take effect until you return to full-time work for one full day. This rule also applies to an increase in your coverage.

**Dependents**

Coverage for your dependents will take effect on the date yours takes effect if, by then, you have signed the form to enroll. Also, in order to be sure coverage is in force for any new dependents you acquire, you should report any changes.
Any provision in this Plan which:

**Special Rules Which Apply To An Adopted Child**

- requires evidence of good health which is acceptable to Aetna for coverage to become effective;
- delays coverage due to a confinement;
- limits coverage as to a preexisting condition;

GAETA018

will not apply to effect the initial health coverage for a child who meets the definition of

dependent as of the date the child is "placed for adoption" (this means the assumption and retention of a legal obligation for total or partial support of a child in anticipation of adoption of the child), provided:

- such placement takes effect after the date your coverage becomes effective; and
- you make written request for coverage for the child within 31 days of the date the child is placed with you for adoption.

Coverage for the child will become effective on the date the child is placed with you for adoption. If request is not made within such 31 days, coverage for the child will be subject to all of the terms of this Plan and will only become effective if evidence of his or her good health, acceptable to Aetna, is given to Aetna.

**Special Rules Which Apply to A Child Who Must Be Covered Due To A Qualified Medical Child Support Order**

Any provision in this Plan which:

- requires evidence of good health which is acceptable to Aetna for coverage to become effective;
- delays coverage due to a confinement;
- limits coverage as to a preexisting condition;

will not apply to effect the initial health coverage for a child who meets the definition of dependent and for whom you are required to provide health coverage as the result of a qualified medical child support order issued on or after the date your coverage becomes effective; provided you make written request for such coverage within 31 days of the court order. Coverage for the child will become effective on the date of such court order. If request is not made within such 31 days, coverage for the child will be subject to all of the terms of this Plan and will only become effective if evidence of his or her good health, acceptable to Aetna, is given to Aetna.

If you are the non-custodial parent, proof of claim for such child may be given by the custodial parent. Benefits for such claim will be paid to the custodial parent.

# Health Expense Coverage For You and Your Dependents

Your Booklet spells out the period to which each maximum applies. These benefits apply separately to each covered person.

If a hospital or other health care facility does not separately identify the specific amounts of its room and board charges and its other charges, Aetna will use the following allocations of these charges for the purposes of the group contract.

| | |
|---|---|
| Room and board charges: | 40% |
| Other charges: | 60% |

This allocation may be changed at any time if Aetna finds that such action is warranted by reason of a change in factors used in the allocation.

**Comprehensive Medical Expense Coverage**

### Certification Requirement

GAETA019

If you or one of your dependents require confinement in a hospital:

Days in the hospital must be certified if full plan benefits are to be available.

10/13/04

As soon as you or one of your dependents know confinement will be required, read the Comprehensive Medical Expense Coverage section of the Booklet for details on how to get the certification.

Certification for Hospital Admissions
Excluded Amount                          $ 300
Reduced Payment Percentage               50%, applicable to fees for necessary
                                         days in excess of the number of days
                                         certified

## The Benefits Payable

After any applicable deductible, the Health Expense Benefits payable under this Plan in a calendar year are paid at the Payment Percentage which applies to the type of Covered Medical Expense which is incurred, except for any different benefit level which may be provided later in this Booklet.  Benefits may vary depending upon whether a Preferred Care Provider is utilized.  A Preferred Care Provider is a health care provider who has agreed to provide services or supplies at a "negotiated charge."  See your Employer for a copy of the Directory which lists these health care providers.

Any charge for a service or supply furnished by a Preferred Care Provider in excess of such provider's negotiated charge for that service or supply will not be a covered expense under the group contract.  This rule will not apply to any service or supply for which a benefit is provided under Medicare before the benefits of the group contract are payable.

## Deductible Amounts
### Calendar Year Deductible
Preferred Care only                      $ 200*
Preferred & Non-Preferred Care           $ 600*

This Calendar Year Deductible applies to all expenses except the following expenses incurred for Preferred Care and Non-Preferred Care:

Inpatient Hospital Expenses
In-Hospital Physicians Expenses
Anesthesia Expenses
X-ray & Radiation Therapy Expenses
Diagnostic Lab & X-ray Expenses
Second Surgical Opinion Expenses
Preoperative Testing Expenses
Outpatient Surgical Expenses

GAETA020

4

| *Home Health Care Deductible* | If the Calendar Year Deductible has not yet been met, a Home Health Care Deductible of up to $50 must be met before benefits are payable. If the Calendar Year Deductible has already been satisfied, the Home Health Care Deductible will not apply. |

Not more than the Calendar Year Deductible will be deducted from the total covered medical expenses incurred in a calendar year for two or more family members born in a multiple birth if those covered expenses are incurred in the same calendar year in which they are born and are due to premature birth, abnormal congenial condition, or injury which is received, or sickness which starts more than 30 days after their birth.

### *Common Accident Deductible Limit*
| Preferred Care Only | $ 200 |
| Preferred & Non-Preferred Care | $ 600 |

An added benefit may be paid if for injuries arising out of the same accident:

- Covered Medical Expenses are incurred by 2 or more persons in your family; and
- these expenses are applied against the separate Calendar Year Deductibles; and
- in the year of the accident and the next year, they exceed the Common Accident Deductible Limit.

The added benefit is 80% of the excess. It does not count against any person's Lifetime Maximum Benefit.

### *Family Deductible Limit*
| Preferred Care Only | $ 200 |
| Preferred & Non-Preferred Care | $ 1,800 |

If Covered Medical Expenses incurred in a calendar year by you and your dependents and applied against the separate Calendar Year Deductibles equal the Family Deductible Limit, you and your dependents will be considered to have met the separate Calendar Year Deductibles for the rest of the calendar year. An expense incurred in the last 3 months of a calendar year which is applied against a family's Family Deductible Limit will reduce their Family Deductible Limit for the next year. Three family members must meet their individual Calendar Year Deductibles in order to accumulate the Family Deductible Limit.

If any expense is covered under one type of Covered Medical Expense, it cannot be covered under any other type.

## Payment Percentage
The Payment Percentage applies after any deductible amounts.

### *For Inpatient Hospital Expenses*

| Preferred Care | Non-Preferred Care |
|---|---|
| 90% | 70% |

### *For Physicians Fees*

| Preferred Care | Non-Preferred Care |
|---|---|
| Non-surgical Office Visits - 100% after a $ 5 copay | 70% |

GAETA021



10/13/04

Other - 90%                70%

### For Other Covered Medical Expenses
100% as to:

   Second Surgical Opinion Expenses
   Preoperative Testing & Facility Expenses
   Surgeon Expenses including Anesthesiologist & Anesthetist for Outpatient Surgery
   Separate Accident Expenses
   Diagnostic Lab & X-ray Expenses
   X-ray & Radiation Therapy Expenses

80% as to:

   Skilled Nursing Facility Expenses
   Spinal Disorder Treatment Expenses
   Durable Medical Equipment Expenses
   Prescription Drugs or Medicine

70% as to:

   Home Health Care Expenses
   All Other Medical Expenses for which a Payment Percentage is not otherwise shown.

## Mental Disorders, Alcoholism and Drug Abuse
### Payment Percentage:
*Mental Disorders*
   Inpatient: 70% of Covered Medical Expenses (90% if given by a Preferred Care
      Provider) incurred for care for inpatient charges made by a hospital or physician.
   Outpatient: 80%, up to the Special Outpatient Calendar Year Maximum, of Covered
      Medical Expenses incurred for outpatient treatment.
*Alcoholism & Drug Abuse*
   Inpatient: 70% of Covered Medical Expenses (90% if given by a Preferred Care
      Provider) incurred for inpatient charges made by a hospital or physician.
   Outpatient: 80% of Covered Medical Expenses incurred for outpatient treatment.

### Deductible
Mental Disorders, Alcoholism &
   Drug Abuse (combined) Deductible          $ 400

Inpatient Calendar Year Maximum             31 days

### Mental Disorders
Special Outpatient
   Calendar Year Maximum                     $ 1,500*

However, a limitation applies to Covered Medical Expenses incurred for charges made by
a Special Care Facility** for (1) Physical Rehabilitation; or (2) the diagnosis and
treatment of Mental Disorders. For these expenses only, any benefits provided after the
Calendar Year Deductible will be payable at 50% and a $2,500 Mental Nervous Calendar
Year Maximum will apply. Once this Mental-Nervous Calendar Year Maximum is met,
no additional charges will be payable under this provision.

** A Special Care Facility is a licensed institution other than a hospital which:

   • Specializes in physical rehabilitation; or


GAETA022